### In re HARRIS.

(Supreme Court, Appellate Division, Fourth Department.   October 18, 1901.)

JUSTICE OF THE PEACE—REMOVAL FROM OFFICE—GROUNDS.

> Respondent, while justice of the peace, and, by virtue of his office, a member of an election board, received ballots, and as they were presented by the electors, and before depositing them in the ballot box, examined them to discover how the electors voted, and signaled to one of his friends outside the board the information obtained. Respondent, at this election, had money, which he used to secure votes for a measure under consideration. His conduct in examining the ballots having been criticised by an attorney present as a watcher, he announced his purpose to assault the attorney, and the next day committed the assault, which was of an aggravated and cowardly character. *Held*, that the facts were sufficient to warrant respondent's removal from the office of justice of the peace for violation of the election laws and the crimes act, under Code Cr. Proc. § 132, empowering the supreme court at general term to remove justices of the peace.

Petition by George H. Harris for the removal from the office of justice of the peace of Nelson Rounsevell.   Report of referee recommending respondent's removal confirmed.

See 71 N. Y. Supp. 1137.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

D. P. Richardson, for petitioner.
W. N. Rennick, for respondent.

WILLIAMS, J.   Upon charges made and an answer thereto, a reference was ordered to take proofs of the facts, and report with opinion thereon.   The referee has taken and reported the proofs, with his opinion, and application is now made for a final disposition of the matter.   The charges are three in number:  (1) That respondent was a man of bad character (specifying acts of gross immorality).   (2) That while acting as a justice of the peace, and a member and the presiding officer of the election board, at a town meeting in his town, he violated the election laws of the state by opening and examining ballots presented by electors to him to be deposited by him in the ballot boxes, and ascertained how the electors voted, and communicated such information to another person present;  and that he had money for use, and used the same, to corrupt voters at the same town meeting.   (3) That he committed an aggravated assault and battery upon a lawyer who had been a watcher at such town meeting.   The referee expresses the opinion

that all these charges are sustained by the evidence, and states particularly what appears as to the extent as to the respondent's wrong-doing. We have examined the evidence, and find that the opinion of the referee is fully justified thereby. The respondent did not present himself as a witness, did not contradict any of the evidence given against him, and not only the evidence as to his conduct, but as to his own statements with reference thereto, stand unanswered by him. This being so, there can be no doubt as to our duty to remove him from office. He was guilty of acts of gross immorality, which we need not recite in detail, as our decision is not based thereon. At a town meeting in his town there was a contest on the question of license. The respondent was in favor of license, and had in his hands over $100, contributed by persons interested in bringing out the license or liquor vote, and used some of it, at least, to induce persons to vote for license. He was, by virtue of his office, a justice of the peace, a member of the election board at that town meeting, and was made chairman of the board, and took the ballots as they were presented by the electors, and deposited them in the ballot boxes. During the earlier part of the day he examined the ballots taken by him on the question of license, and found out how the electors voted, and signaled to one of his friends outside the board the information. This was a flagrant violation of the election laws of the state providing for the secrecy of the ballot. It was objected to by a lawyer present,—a Mr. Todd,—and by others. The respondent said that he had a perfect right to examine the ballots to see how the votes were cast; that the only thing the officer could not do was to open the ballots so as to see the inside or face, or communicate his knowledge to some one else; that no one could object to his knowing how a man voted; that the crime was in giving it away; that if he looked at the ballots, and motioned to somebody, indicating the way the vote was, that would not be any offense under the statute. A short time after this town meeting, the respondent announced his intention of assaulting the lawyer, Todd, who was a watcher at the town meeting, and who had objected to his examining the ballots of electors, and the next day after announcing such intentions he did commit such assault. He was himself a young man of 23 years of age, strong, and well built, and Todd was a man over 50 years of age, and a cripple. The attack was a cowardly one, respondent striking Todd in the back, without giving him any chance even to defend himself, and following up the attack by inflicting severe physical injuries upon Todd. He was arrested for this crime, was brought before another justice of the town, was convicted of the offense, fined $25, and paid the fine. He was a peace officer of the town, and it was his duty to compel others to keep the peace, and still he committed this crime—this aggravated assault—himself, not from any sudden impulse or heat of passion aroused at the time, but deliberately, having announced his intention to do so the day before. The mere recitation of these established facts is sufficient to justify our determination to remove respondent from his office. The cowardly assault committed by this man upon his neighbor, a cripple, shocks not only our sense of justice, but of decency, while the delib-

erate and persistent violation of the election law while in the performance of his duty as presiding officer of the town election board, destroying the secrecy of the ballot, which the legislature has so carefully provided for, and which our whole people are so much interested in preserving, was without excuse or palliation, and renders respondent entirely unfit to further hold this judicial office, where he can do so much harm.

An order should be entered confirming the referee's report, and removing the respondent from office. The order should further provide that the respondent pay the cost of this proceeding. All concur.